**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| ALL CLASS AND DIRECT ACTION PLAINTIFFS, | Case No. 23-1133 |
| *Plaintiffs,* | **PLAINTIFFS' MOTION TO COMPEL AND ENFORCE COMPLIANCE WITH SUBPOENA** |
| BRADLEY SHAFER, | |
| *Defendant.* | |

Pursuant to Fed. R. Civ. P. 45(d)(2)(B)(i), Class and Direct Action Plaintiffs to the multi-district litigation pending in the United States District Court for the District of Minnesota, *see In re Cattle and Beef Antitrust Litigation*, No. 22-md-3031 (D. Minn.), hereby move the Court to compel and enforce compliance with the subpoena served on Defendant Brad Shafer. Plaintiffs do not request a hearing on this Motion.

I.      **INTRODUCTION**

This Motion to Compel concerns a multi-district litigation ("MDL") pending in the United States District Court for the District of Minnesota involving allegations of an antitrust conspiracy in the cattle and beef packing industries.  *See In re Cattle and Beef Antitrust Litigation*, No. 22-md-3031 (D. Minn.).  The Class and Direct-Action Plaintiffs to that action (collectively, "Plaintiffs") successfully served a subpoena to produce mobile device data on Brad Shafer, a former employee of Defendant Tyson and a document custodian in that action.[1]  Mr. Shafer has yet to comply with multiple requests from Plaintiffs and counsel for Tyson, and he has not

---

[1] Tyson Foods, Inc. or Tyson Fresh Meats, Inc. is collectively referred to herein as "Tyson."

produced the requested data.  Accordingly, Mr. Shafer has waived all objections to the subpoena.
Plaintiffs respectfully move the Court for an order compelling compliance therewith.

## I.     FACTUAL BACKGROUND

### A.     PLAINTIFFS SUCCESSFULLY SERVED A SUBPOENA SEEKING MOBILE DEVICE DATA ON MR. SHAFER.

Mr. Shafer is designated as a document custodian in the MDL because he possesses
information relevant to the parties' claims and defenses.  Custodial discovery in the MDL has
included mobile device data—specifically, text messages, social media data, and contact
information.  For document custodians whose mobile device data is in the possession, custody, or
control of a Defendant, Plaintiffs have obtained that discovery from the Defendant.  For other
document custodians, however, Plaintiffs have obtained the discovery directly from the individual
custodian.[2]

On November 18 and December 14, 2022, Tyson disclosed that Mr. Shafer used his cell
phone for business purposes, but that Tyson did not have possession, custody or control of that cell
phone or associated mobile device data.  *See* Freese Decl. ¶ 2.  On May 31, 2023, Plaintiffs served
on Mr. Shafer a subpoena to produce documents and information limited to mobile device data.[3]
*See* Ex. 1-1 (subpoena); *see also* Ex. 1-2 (proof of service).  The subpoena consists of five requests

---

[2] To that end, the MDL parties developed and agreed to search terms that will be used exclusively
to identify responsive text messages, and also agreed that inter-Defendant text messages would be
reviewed linearly.  *See* Case No. 20-cv-01319-JRT-HB, ECF No. 572 ("Search Methodology
Order").  Those same search terms and methods would be utilized here.
[3] Plaintiffs served Mr. Shafer at his address: 1424 Harrell Rd, Howe, Grayson County, TX 75459.
Ex. 1-2.

substantially similar to requests for custodians whose mobile device data is in Tyson's possession, custody, or control:[4]

REQUEST 1: All Documents concerning your Communications, including Text Messages, that you sent to or received from a current or former Representative of a Defendant other than Tyson during the Relevant Time Period, and which concerns (1) fed cattle producers, fed cattle supply, fed cattle purchases, and/or fed cattle prices (general or specific) in the United States; (2) fed cattle slaughter levels in the United States, including operation of Defendants' plants and short-term closures; (3) beef supply, beef sales, beef customers, and/or beef prices (general or specific) in the United States; (4) live cattle futures or options on live cattle futures transactions involving trades on the CME, for specific trades and market dynamics generally; (5) participation in a Trade Association meeting or event, or other Industry Meeting or Investor Conference; or (6) proposed or actual meetings, calls, or other communication of unspecified or unclear purpose.

REQUEST 2: All Documents concerning your Communications, including Text Messages, regarding that you sent to or received from a current or former Representative of Tyson during the Relevant Time Period, and that relate to (1) fed cattle producers, fed cattle supply, fed cattle purchases, and/or fed cattle prices (general or specific) in the United States; (2) fed cattle slaughter levels in the United States, including operation of Defendants' plants and short-term closures; (3) beef supply, beef sales, beef customers, and/or beef prices (general or specific) in the United States; (4) live cattle futures or options on live cattle futures transactions involving trades on the CME, for specific trades and market dynamics generally; or (5) participation in a Trade Association meeting or event, or other Industry Meeting or Investor Conference.

REQUEST 3: All Documents concerning your Communications, including Text Messages, sent to or received from any Third-Party Conduit, potential (or actual) Beef customers, or Cattle suppliers during the Relevant Time Period, and that relate to (1) fed cattle producers, fed cattle supply, fed cattle purchases, and/or fed cattle prices (general or specific) in the United States; (2) fed cattle slaughter levels in the United States, including operation of Defendants' plants and short-term closures; (3) beef supply, beef sales, beef customers, and/or beef prices (general or specific) in the United States; (4) live cattle futures or options on live cattle futures transactions involving trades on the CME, for specific trades and market dynamics generally; or (5) participation in a Trade Association meeting or event, or other Industry Meeting or Investor Conference.

REQUEST 4: All Social Media Data: (1)(a) sent to or received from a current or former Representative of a Defendant, a Third-Party Conduit, or potential (or

---

[4] Plaintiffs' Requests were modified to match their compromises in their opposition briefing regarding the Cargill custodians' motions to compel, and therefore, are nearly identical to those ordered by the District of Minnesota in July. *See infra*.

actual) Beef customers or Cattle suppliers during the Relevant Time Period, or (b) posted to a public or private forum; and (2) concerning the markets for Beef, Cattle, and/or Cattle Futures.

REQUEST 5: Documents reflecting contact information for any person who is or was an owner, Employee, consultant, officer, board member, representative, or agent of: (i) a Defendant; (ii) a cattle/beef industry or financial analyst; or (iii) a Trade Association.

Ex. 1-1 at 12–13.  The deadline for production was June 30, 2023.  *Id.* at 3.  However, Mr. Shafer did not formally respond—either through written objections, a motion to quash, or compliance—to Plaintiffs' subpoena. Although Mr. Shafer did initially informally discuss the subpoena with Plaintiffs' counsel, Zach Freese, he eventually stopped responding to Plaintiffs' communications. *See infra.*

## B.    THE MDL COURT SUSTAINED THE SCOPE OF NEARLY IDENTICAL SUBPOENAS.

Three individuals in the same position as Mr. Shafer challenged substantially similar subpoenas in the MDL.  *See In re Rule 45 Subpoena Issued to Nancy Lucas Dated February 10, 2023*, Nos. 23-mc-00040 (JFD), 23-mc-00041 (JFD), 23-mc-00042 (JFD), 2023 WL 4561320 (D. Minn. July 17, 2023).[5]  Nancy Lucas, Scott Howard, and Don Porter are former employees of Defendant Cargill who are also document custodians that used their mobile devices for business purposes.  *Id.* at *1.  The three former Cargill employees separately moved to quash their subpoenas on several grounds, including that the productions made by Cargill would suffice; the responsive information and communications on their personal cell phones was not relevant or proportional; and that producing these communications and information would be unduly burdensome.[6]  *Id.*

---

[5] A copy of this order is attached to Freese Decl. as Ex. 2.
[6] The Cargill custodians agreed to Request No. 1 (Requests Nos. 1-2 here) prior to the briefing. *See* Freese Decl. ¶ 4.

Applying Federal Rules of Civil Procedure 26 and 45, Magistrate Judge Docherty ordered the former Cargill employees to comply with Plaintiffs' mobile device subpoenas, narrowing just one of the requests.  *Id.* at *2–4.[7]  In doing so, Magistrate Judge Docherty found that although the former Cargill employees had "a substantial privacy interest in their personal cell phones and communications", and that while temporary loss of their cell phones would be "inconvenien[t] and [a] slight burden", the MDL Plaintiffs had shown a compelling need for the communications and information therein.  *Id.* at *2.  Magistrate Judge Docherty also made specific findings as to subpoena requests Nos. 2–4, which, as narrowed by Plaintiffs or the District of Minnesota, are nearly identical to Mr. Shafer's subpoena, finding that each request was relevant and proportional and not unduly burdensome.  *Id.* at *3–4.

Additionally, with respect to the relevant periods for the Cargill employees, Magistrate Judge Docherty agreed with an earlier "ruling by U.S. Magistrate Judge Hildy Bowbeer . . . that unstructured-data discovery predating the class period [beginning January 1, 2015] by two years

---

[7] Request No. 2 (Request No. 3 here) "[a]ll Documents concerning your Communications, including text messages, regarding the U.S. markets for Beef, Cattle and/or Cattle Futures that, during the Relevant Time Period, you sent to or received from any other Person who was not at the time a Representative of a Defendant" was narrowed by Plaintiffs to communications sent or received from third-party conduits, beef customers, or cattle suppliers.  *In re Rule 45 Subpoena*, 2023 WL 4561320, at *3.  Plaintiffs also agreed to include the same subject matter limitations as reflected in Request No. 3 here but agreed to exclude text messages about meetings or communications with an unspecified or unclear purpose. *Id.*  Request No. 3 (Request No. 4 here) "[a]ll Social Media Data during the Relevant Time Period concerning the markets for Beef, Cattle and/or Cattle Futures or reflecting Communications with a current or former Representative of a Defendant" was narrowed by Plaintiffs to "all Social Media Data: (1)(a) sent to or received from a current or former Representative of a Defendant, a third-party conduit, or potential (or actual) Beef customers or Cattle suppliers during the Relevant Time Period, or (b) posted to a public or private forum; and (2) concerning the markets for Beef, Cattle, and/or Cattle Futures."  *Id.* at *4. The Court further narrowed this request by requiring Plaintiffs to identify the relevant Beef customers and Cattle suppliers. *Id.* Finally, Request No. 4 (Request No. 5 here) was narrowed by Plaintiffs to "contact information for any person who is or was an owner, Employee, consultant, officer, board member, representative, or agent of: (i) a Defendant; (ii) a cattle/beef industry or financial analyst; or (iii) a Trade Association." *Id.*

is relevant and proportional." *Id.* at *3.  Similarly, Plaintiffs seek mobile device data from January 1, 2013 through March 22, 2017 (the end of Mr. Shafer's employment with Tyson).  *See* Ex. 1-1 at 6.

### C.   MR. SHAFER'S FAILURE TO RESPOND TO PLAINTIFFS AND TYSON'S COUNSEL.

On June 1, 2023, Plaintiffs' counsel Zach Freese spoke on the phone with Mr. Shafer "regarding [the] subpoena for your phone records regarding your time at Tyson[,]"[8] Ex. 3, during which he acknowledged that he used his cell phone for beef and work-related communications during his employment and that he has had the same phone number since leaving Tyson. Freese Decl. ¶ 6.  Thereafter, on August 4, 2023, Plaintiffs emailed Mr. Shafer asking him to comply with the subpoena by providing his cell phone data to one of three forensic companies located in the Dallas metropolitan area and offered to cover his expenses.  *See* Ex. 4 at 4–5.  Mr. Shafer responded with some questions to which Plaintiffs answered.  *Id.* at 3–4. On September 29, 2023, having not received a response from Mr. Shafer, Plaintiffs followed up with Mr. Shafer concerning the subpoena.  *Id.* at 2–3.  Mr. Shafer responded with more questions, which Plaintiffs again answered. *Id.* at 1–2.  On October 13, 2023, again having not received a response from Mr. Shafer, Plaintiffs followed up with Mr. Shafer.  *Id.* at 1. Mr. Shafer never responded. *See* Freese Decl. ¶ 10; *see also* Ex. 4.  To date, Mr. Shafer has not complied with Plaintiffs' initial subpoena request, nor has he responded or otherwise communicated with Plaintiffs.  Freese Decl. ¶¶ 10, 12. Out of an abundance of caution, Plaintiffs once again reached out to Perkins Coie to confirm they did not represent Mr. Shafer, which they confirmed on November 15, 2023. *See* Freese Decl. ¶ 11.

---

[8] Freese and Mr. Shafer set up a call for July 10, 2023, *see* Ex. 3; however, due to Perkins Coies' possible representation of Mr. Shafer communications concerning the subpoena briefly halted. On or around July 25, 2023, counsel from Perkins Coie confirmed that they would not represent Mr. Shafer.  *See* Freese Decl. ¶ 8.

Accordingly, Plaintiffs move to compel Mr. Shafer's compliance with the subpoena as slightly modified by the MDL Court's July 17, 2023 Order.

## II.    ARGUMENT

### A.    THIS DISTRICT SHOULD COMPEL PRODUCTION SINCE MR. SHAFER WAIVED HIS ABILITY TO OBJECT TO OR QUASH THE SUBPOENA.

Rule 45 governs nonparty subpoenas. *See Andra Grp., LP v. JDA Software Grp., Inc.*, 312 F.R.D. 444, 447 (N.D. Tex. 2015) ("Federal Rule of Civil Procedure 45 explicitly contemplates the use of subpoenas in relation to non-parties.") (internal citation omitted).  Nonparties have an obligation "once subject to a subpoena, to participate in transparent and collaborative discovery." *Id.* at 450 (internal citations omitted).  In response to a subpoena, nonparties may formally move to quash the subpoena or file written objections. *See* Fed. R. Civ. P. 45(d)(2)(B), (d)(3)(A).  Written objections must be made "before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Fed. R. Civ. P. 45(d)(2)(B); *see also MetroPCS v. Thomas*, 327 F.R.D. 600, 615 (N.D. Tex. 2018) (finding that, in general, motions to quash are timely filed prior to the return date of the subpoena).

If a nonparty does not timely file objections or move to quash, they waive their ability to challenge the subpoena.  *See MetroPCS*, 327 F.R.D. at 607 ("Thus, in the majority of cases, a person—whether a traditional party (i.e., a plaintiff or defendant) or a non-party—waives objections if he/she/it fails either to serve timely objections on the party seeking discovery or to file a timely motion with the court.") (cleaned up); *Arthur J. Gallagher & Co. v. O'Neill*, No. CV 17-2825, 2017 WL 5713361, at *1 (E.D. La. Nov. 27, 2017), *on reconsideration*, No. CV 17-2825, 2017 WL 6524044 (E.D. La. Dec. 21, 2017) (for a nonparty, ignoring a subpoena is the "worst option, almost certain to result in a contempt citation under Rule 45(g) and a finding that all

objections have been waived").  Rule 45 enables the serving party to move for an order to seek compliance with the subpoena.  *See* Fed. R. Civ. P. 45(d)(2)(B)(i).  Motions to compel should be filed in the district "where compliance is required."  *Id.*

Here, the Eastern District of Texas is the appropriate court to compel Mr. Shafer's compliance with the subpoena. Mr. Shafer is a resident of Grayson County, Texas, and Grayson County is where he was served; thus, the Eastern District of Texas is "where [his] compliance is required."  *See* Fed. R. Civ. P. 45(d)(2)(B)(i).  Next, because Mr. Shafer did not formally object to the mobile device data that Plaintiffs requested within 14 days of receiving the subpoena and did not file a motion a quash prior to June 30, 2023, he has waived any objections.  *See MetroPCS*, 327 F.R.D. at 607.  Indeed, Plaintiffs contacted Mr. Shafer on multiple occasions through telephonically and through email in an effort to avoid motion practice and to allow Mr. Shafer sufficient time to avail himself of his procedural rights.  *See* Exs. 3, 4; Freese Decl. ¶ 6.  His failure to do so despite Plaintiffs' patience reinforces his waiver.  Simply put, all that is left for the Court is to do is order compliance.

**B.   PLAINTIFFS SEEK INFORMATION RELEVANT AND PROPORTIONAL TO THE MDL, AS FOUND BY THE MDL COURT ITSELF.**

Rule 26 applies to subpoenas.  *Louisiana Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, 650 F. Supp. 3d 491, 499 (E.D. La. 2023) ("Although governed in the first instance by Rule 45, non-party subpoenas are also subject to the parameters of Rule 26.") (footnote omitted).  Liberal in application, Rule 26 governs the scope of discoverable information permitted by parties in litigation, including subpoenas.  In text, Rule 26 provides: "parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable."  *Carr v. State Farm Mut.*

*Auto. Ins. Co.*, 312 F.R.D. 459, 463 (N.D. Tex. 2015) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).  Discovery must also be proportional, which takes into consideration "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1); *see also Hall v. Rent-A-Ctr., Inc.*, No. 4:16CV978, 2018 WL 4293141, at *3 (E.D. Tex. Aug. 31, 2018) ("The burden is on the party resisting discovery to establish the discovery is not proportional.").

Even if Mr. Shafer timely objected to the subpoena or moved to quash, the mobile device data Plaintiffs seek meets the standards of Rule 26.  First, the documents are plainly relevant.  The mobile device data Plaintiffs request from Mr. Shafer are text messages and social media data concerning the United States markets for beef, cattle, and cattle futures, as well as associated contact information.  *See* Ex. 1-1 at 12–13.  These communications will, among other things: (1) show the decisions and impact of Defendants' decisions on cattle and beef prices; (2) reveal the motivations underlying otherwise innocuous operational decisions; (3) help identify third-parties who acted as "go-betweens" for the Defendants, passing information about one to the other.  *See, e.g., In re Pork Antitrust Litig.*, No. 18-cv-01776 (JRT/HB), 2022 WL 972401, at *14  (D. Minn. Mar. 31, 2022) (noting relevance of text messages between Defendants and other integrators about pork supply, demand, and pricing and acknowledging they could reveal the substance of the alleged conspiracy and help plaintiffs understand the tone, language, and content of their communications); *Thomas v. City of New York*, 336 F.R.D. 1, 5 (E.D.N.Y. 2020) ("Defendants are required to search and produce Squad 8 GroupMe chat messages."); *V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 367 (D. Nev. 2019) (ordering production of personal emails and texts, with sworn

declaration detailing searches conducted); *IQVIA, Inc. v. Veeva Sys., Inc*., No. 17-cv-00177, 2018 WL 4952595, at *7 (D.N.J. Oct. 12, 2018) (compelling production of text messages); *see also, e.g.*, *Plymouth Cnty. Retirement Sys. v. Patterson Cos., Inc.*, No. 18-cv-00871 (MJD/SER), 2019 WL 3336119 at * 2–12, 19–20 (D. Minn. July 25, 2019), *adopted with modification*, 2019 WL 4277302 (D. Minn. Sept. 10, 2019) (supporting inference of scienter for antitrust claim with texts and emails used not only to pass information up and down levels of employees, but also to check in with counterparts at other businesses with which they should have been competing to confirm compliance with boycott and pricing-fixing plan).

Second, the requested information is also proportional to the needs of the case.  Plaintiffs seek mobile device data from July 6, 2014 through March 22, 2017 (the length of Mr. Shafer's employment with Tyson). *See* Ex. 1-1 at 6.  Each request is related to Mr. Shafer's employment at Tyson, *id.* at 12–13, and the subpoena's instructions clarify that Plaintiffs seek only information in Mr. Shafer's possession, custody, or control. *Id.* at 6; *see also* Ex. 4 at 1–2.  Plaintiffs further represent, as they offered throughout their early communications, Ex. 4 *in toto*, that they would work with Mr. Shafer to complete cellphone imaging as quickly as possible, cover the costs, and explained that it is often completed within 24 hours or less.  *See* Freese Decl. ¶ 13; Ex. 4.

Third, the MDL court determined that nearly identical mobile device data sought from former Cargill employees is relevant and proportional to the MDL, and that the relevant time period is consistent with court-ordered discovery limits.  *See In re Rule 45 Subpoena*, 2023 WL 4561320, at *3–4.  Accordingly, not only could this Court independently determine that the subpoenaed mobile device data is relevant to the MDL and proportional to the needs of the litigation, it could also rely on the conclusions reached by the very court overseeing that litigation.

*See Sparkman v. Charles Schwab & Co.*, 336 F. App'x 413, 415 (5th Cir. 2009) ("One court may take judicial notice of another district court's judicial actions.").

Accordingly, Plaintiffs request this Court compel Mr. Shafer to comply with the properly served subpoena.

## III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order Granting the Motion to Compel and requiring Mr. Shafer to comply with the subpoena.

Dated: December 21, 2023                     Respectfully submitted,

                                             /s/ Zachary J. Freese
                                             David M. Cialkowski (MN# 0306526)
                                             Ian F. McFarland (MN# 0392900)
                                             Zachary J. Freese (MN# 0402252)*
                                             ZIMMERMAN REED LLP
                                             1100 IDS Center
                                             80 S. 8th St.
                                             Minneapolis, MN 55402
                                             Tel: (612) 341-0400
                                             Fax: (612) 341-0844
                                             david.cialkowski@zimmreed.com
                                             ian.mcfarland@zimmreed.com
                                             zachary.freese@zimmreed.com

                                             *Pro Hac Vice application filed
                                             contemporaneously

                                             **Attorney for Plaintiffs**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), Plaintiffs certify that they have communicated with Bradley Shafer telephonically regarding Plaintiffs' subpoena and have attempted to negotiate production, but the parties were unable to reach an agreement.

*/s/ Zachary J. Freese*
Zachary J. Freese

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December 2023, I have mailed a copy of this document by United States First Class mail to the following non-CM/ECF participants at:

Brad Shafer
1424 Harrell Road
Howe, TX 75459

*/s/ Zachary J. Freese*
Zachary J. Freese